**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

Northern PCS Services, LLC,

                    Plaintiff,

                                      Civ. No. 05-2744 (RHK/RLE)
                                      **MEMORANDUM OPINION**
                                      **AND ORDER**

v.

Sprint Nextel Corporation f/k/a Sprint
Corporation, Sprint Spectrum L.P.,
WirelessCo, L.P., Sprint Communications
Company, L.P., and Nextel
Communications, Inc.,

                    Defendants.

John L. Krenn, Craig A. Brandt, Dean C. Eyler, Gray Plant Mooty Mooty & Bennett, P.A., Minneapolis, MN, for Plaintiff.

Geoffrey J. Ritts, Jones Day, Cleveland, OH; Jack M. Fribley and Daniel J. Connolly, Faegre & Benson LLP, Minneapolis, MN; and Daniel J. King and Emily J. Culpepper, King & Spalding, LLP, Atlanta, GA, for Defendant.

**Introduction**

      Plaintiff Northern PCS Services, LLC ("Northern") has sued Defendants Sprint Nextel Corporation, f/k/a Sprint Corporation ("Sprint Nextel"), various Sprint entities[1], and Nextel Communications, Inc. ("Nextel"), alleging claims arising from contracts entered into by Northern and Sprint prior to Sprint's merger with Nextel. Nextel now seeks to

---

[1] Specifically, Northern has sued Sprint Spectrum L.P., WirelessCo, L.P., and Sprint Communications Company, L.P. (Compl. ¶ 7.) The Court will refer to these Sprint entities and the pre-merger Sprint Corporation collectively as "Sprint."

dismiss Northern's tortious interference with contract and civil conspiracy claims, arguing that Northern has not adequately alleged that Nextel procured the breach of any contract between Sprint and Northern. For the reasons set forth below, the Court will deny Nextel's Motion to Dismiss.

**Background**[2]

Sprint Nextel, a Kansas corporation with its principal place of business in Virginia, is a global communications company that offers wireless personal communications services ("PCS") and related telephony products and services through its subsidiaries and affiliated entities. (Compl.[3] ¶ 6.) Nextel is a Delaware corporation with its principal place of business in Virginia, and is a wholly-owned subsidiary of Sprint Nextel. (Id. ¶ 9.) It too is a nationwide provider of communications products and services with its own nationwide wireless network. (Id.)

---

[2]For purposes of this Motion, the Court accepts the allegations in Northern's Complaint as true.

[3]Northern filed a Second Amended Complaint by stipulation of the parties (see Doc. No. 36), on March 30, 2006, (Doc. No. 38), after this Motion was taken under advisement. The parties have represented to the Court that "the second amendment to the Complaint adds no new allegations against Nextel Communications, and that the amendment has no bearing upon the [instant] motion to dismiss. In other words, the motion as argued applies to the new version of the Complaint." (April 3, 2006 Letter from Mr. Fribley (Doc. No. 40)).) For simplicity, the Court will refer to the Second Amended Complaint as the "Complaint."

In the 1990's, in order to obtain various PCS licenses[4] from the Federal Communications Commission ("FCC"), Sprint was required to construct a certain percentage of its nationwide wireless services network within five years.  (Id. ¶ 12.)   To satisfy this requirement, Sprint divided its nationwide PCS network geographically into "Service Areas."  (Id. ¶ 13.)  Sprint financed, constructed, and maintained the network in Service Areas located in higher-volume urban markets.  For Service Areas located in lower-density rural markets, Sprint contracted with independently owned and operated third parties, which Sprint refers to as "Affiliates."  (Id. ¶¶ 13-14.)

On October 19, 1999, Northern, a Minnesota company, entered into a Management Agreement with Sprint to become an Affiliate for a Service Area covering parts of Minnesota, North Dakota, Iowa, and Wisconsin (the "Management Agreement").  (Id. ¶ 16.) In the Management Agreement, "Sprint promised not to compete against Northern in its Service Area."  (Id. ¶ 18.)  The Agreement stated:

> **Exclusivity of Service Area:** [Northern] will be the only person or entity that is a manager or operator for Sprint PCS with respect to the Service Area and neither Sprint PCS nor any of its Related Parties will own, operate, build or manage another Wireless Mobility Communications Network in the Service Area so long as this agreement remains in full force and effect and there is no Event of Termination that has occurred giving Sprint PCS the right to terminate this agreement.

---

[4]The PCS licenses referred to herein "authorized Sprint to use certain bands or blocks of frequencies to transmit voice and data throughout the United States."  (Compl. ¶ 12.)

(Id. (the "exclusivity provision").) Northern has constructed, operated, managed and maintained the PCS network in its lower-density Service Area, and has promoted the Sprint brand in that Area "in reliance on Sprint's express promise that Northern PCS would have the exclusive right to the Sprint PCS network, products, and services in its Service Area."[5] (Id. ¶ 20.)

The Management Agreement also mandates that Northern provide Sprint with its "competitively sensitive and highly confidential information concerning nearly every aspect of [its] business operations." (Id. ¶ 21.) In providing Sprint with access to this information, Northern PCS relies on the Management Agreement's exclusivity provision, which bars Sprint from competing with Northern in Northern's Service Area. (Id. ¶ 24.) Northern also relies on a confidentiality provision in the Management Agreement, which provides that the parties keep certain information confidential for a period of three years after the Management Agreement is terminated. (Id. ¶ 25.)

In August 2005, Nextel merged "with and into a wholly-owned subsidiary of Sprint Corporation." (Id. ¶ 32.) Prior to the merger—in December 2004—Sprint had announced that it intended to merge with Nextel. (Id. ¶ 31). At some point after the December 2004 announcement and before the merger, Sprint held a conference call with its Affiliates

---

[5] According to Northern, "[t]his strategy allowed Sprint to satisfy its commitment to the FCC for building out Sprint's national network at a time when Sprint lacked the capital and resources to satisfy its commitment on its own." (Id. ¶ 15.) It also transferred some of the business risks associated with constructing those Service Areas to the Affiliates, and afforded Sprint a competitive advantage. (Id.)

4

during which a Sprint representative "acknowledged that the merger would conflict with Sprint's obligations to its Affiliates and stated that Sprint would attempt to resolve those issues with its Affiliates through negotiation." (Id.) It is Northern's position that, through the merger, Nextel is bound to the Management Agreement as a "Related Party" to Sprint and its subsidiaries. (Id. ¶ 32.)

Northern also alleges that Sprint has "conceded that the merger with Nextel and integration of the Sprint and Nextel networks will cause it to violate its exclusivity commitments to its Affiliates," and that Sprint and Nextel "together acknowledged the consequences that their merger would have on the various exclusivity provisions" in their "joint proxy solicitation material" in which they sought approval of the merger from their shareholders. (Id. ¶¶ 35, 36.) Northern alleges that Sprint and Sprint Nextel have committed breaches and anticipatory breaches of the Management Agreement in numerous ways. (Id. ¶¶ 37-68.) Northern has alleged the following claims against Sprint and Sprint Nextel: (1) anticipatory breach of contract (Count I, Compl. ¶¶ 77-86); (2) breach of the Management Agreement (Count II, Compl. ¶¶ 87-100); and (3) breach of a Trademark License Agreement (Count III, Compl. ¶¶ 101-108).[6]

Against Nextel, Northern has alleged a claim for tortious interference with the Management Agreement. (Count V, Compl. ¶¶ 115-120.) That claim states, in part, that

---

[6]Northern also seeks a declaratory judgment against Sprint and Sprint Nextel (Count IV, Compl. ¶¶ 109-114).

>before signing the merger agreement with Sprint, Nextel knew of the existence of the Management Agreement and of Sprint's exclusivity commitments contained therein.  As explained in Nextel and Sprint's joint proxy solicitation materials, the merger's anticipated value derives, in part, from the combinations of Nextel and Sprint's networks, licenses, and other resources nationwide, without regard to the contractual rights of Northern PCS . . . .  In the same materials, Nextel and Sprint confirmed that the exclusivity rights of Sprint's affiliates such as Northern PCS could limit Sprint Nextel's success in achieving these synergies.
>
>Despite Northern PCS's contractual right to exclusivity in its Service Area, <u>Nextel intentionally cooperated with Sprint to cause the execution of the merger agreement—a significant factor giving rise to the ongoing and threatened future breaches of the Management Agreement by Sprint Nextel</u>.

(Compl. ¶¶ 116, 117 (emphasis added).)  Northern has also alleged a claim of civil conspiracy against all Defendants.  (Count VI, Compl. ¶¶ 121-126.)

Nextel has now moved to dismiss the tortious interference and civil conspiracy claims Northern has brought against it.  Northern's claims against Sprint and Sprint Nextel are not at issue here.

**Standard of Decision**

"Dismissal under Rule 12(b)(6) serves to eliminate actions which are fatally flawed in their legal premises and destined to fail, thereby sparing litigants the burden of unnecessary pretrial and trial activity."  <u>Young v. City of St. Charles, Mo.</u>, 244 F.3d 623, 627 (8th Cir. 2001).  A cause of action "should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff cannot prove any set of facts in support of his claim that would entitle him to relief."  <u>Schaller Tel. Co. v. Golden Sky Sys., Inc.</u>, 298 F.3d 736, 740 (8th Cir. 2002) (internal citations omitted) (citing <u>Kohl v. Casson</u>, 5 F.3d

1141, 1148 (8th Cir. 1993)).  In analyzing the adequacy of a complaint's allegations under Rule 12(b)(6), the Court must construe the complaint liberally and afford the plaintiff all reasonable inferences to be drawn from those allegations.  See Turner v. Holbrook, 278 F.3d 754, 757 (8th Cir. 2002).

**Analysis**

**A.  Tortious Interference with Contract Against Nextel**

Minnesota law recognizes a cause of action for tortious interference with a contractual relationship.  See Kallok v. Medtronic, 573 N.W.2d 356, 362 (Minn. 1998); Kjsebo v. Ricks, 517 N.W.2d 585, 588 (Minn. 1994).  Such a cause of action "requires five elements: (1) the existence of a contract; (2) the alleged wrongdoer's knowledge of the contract; (3) intentional procurement of its breach; (4) without justification; and (5) damages."  Kallok, 573 N.W.2d at 362 (citation omitted).

Nextel argues that Northern's tortious interference claim fails for essentially two reasons, both of which center on the third element of the claim—intentional procurement of the contract's breach.  First, it argues that Northern failed to plead that Nextel intentionally procured a breach of the Management Agreement.  (See Mem. in Supp. at 5-6.)  Second, Nextel argues that Northern's tortious interference claim must fail because "Nextel was directly bound by the Management Agreement when all of the alleged breaches occurred (or will occur)," and "Nextel cannot interfere with its own contractual obligations."  (Id. at 6-7.)  The Court will address each argument in turn.

Nextel's first argument is that Northern did not properly plead the intentional procurement of a breach element of the claim.  (See Mem. in Supp. at 5-6; Reply Mem. at 3-7.)  More specifically, it contends that Northern has not adequately alleged that "Nextel intentionally procured a breach of Northern PCS's contract with Sprint" because Northern has not pled that "at least one breach . . . actually resulted from Nextel's alleged conduct." (Id. at 4.)  According to Nextel, the causal nexus between its alleged actions and any actual breach of the Management Agreement is missing from the Complaint.

Northern's Complaint states that "Nextel knew of the existence of the Management Agreement and of Sprint's exclusivity commitments contained therein" (Compl. ¶ 116); that "[d]espite Northern PCS' contractual right to exclusivity in its Service Area, Nextel intentionally cooperated with Sprint to cause the execution of the merger agreement—a significant factor giving rise to the ongoing and threatened future breaches of the Management Agreement by Sprint Nextel" (id. ¶ 117); and that Sprint's "acquisition of a competing network would violate the Management Agreement" (id. ¶ 39).

The Court determines that Northern has adequately pled that Nextel intentionally procured a breach of the Merger Agreement.  The gist of Northern's allegation is that Nextel was intimately involved in the series of events that led to the execution of the merger agreement, which caused (directly and indirectly) a breach of the Management Agreement.  This type of claim has been recognized by the Minnesota courts.  See Kallok, 573 N.W.2d at 362 (noting that the plaintiff "easily established" this element in the context of a noncompete agreement where "the record demonstrates that [the defendant] met with

[the former employee] on numerous occasions and procured the breach of his noncompete agreements by offering him the vice president position that he eventually accepted").

Nextel attempts to avoid this result by citing to Schaetzel v. Minnesota Mining & Manufacturing Co., 1999 WL 289286 (Minn. Ct. App. May 11, 1998), an unpublished opinion of the Minnesota Court of Appeals. In Schaetzel, the court held that the plaintiff did "not allege a contract between [himself] and [the party alleged to have breached the contract] or that [the allegedly interfering party] knew about any such contract."[7] Id. at * 1. That is not the situation in the instant case. Here, Northern has clearly alleged the existence of a contract entered into by Sprint—the Merger Agreement—and has alleged that Nextel knew of the existence of that Agreement. In addition, Northern alleged that Nextel's actions were "a significant" factor in bringing about the breaches (ongoing and future) of the Management Agreement. Accordingly, the Court determines that Northern has adequately stated a causal nexus between Nextel's alleged actions and the breaches of the Management Agreement.

Nextel also argues that Northern's claim fails because the only breaches of the Management Agreement Northern pleaded are post-merger breaches. (Reply Mem. at 8-12.) According to Nextel, "[t]he tortious interference claim therefore fails as a matter of law, because Nextel cannot tortiously interfere with its own post-merger contractual

---

[7]After determining that "no theory of recovery exists under which [the plaintiff] can obtain relief," the court briefly discussed the principle that, under Minnesota law, "tortious interference requires that the interference cause breach of an existing contract." Schaetzel, 1999 WL 289286, at * 2 (emphasis in original) (citations omitted).

obligations." (Mem. in Supp. at 7.) Nextel relies on the "hornbook law" that "a party or successor party cannot tortiously interfere with its own contracts," as support for this proposition. (<u>Id.</u> (quoting <u>First & First, Inc. v. Dunkin' Donuts, Inc.</u>, 1990 WL 36139 (E.D. Pa. Mar. 27, 1990)).)

  While the Court does not take issue with Nextel's recitation of this "hornbook law," it fails to see how such a principle is controlling here. Northern alleges that Nextel's cooperation with Sprint in executing the merger agreement caused actual <u>and anticipatory</u> breaches to the Management Agreement. Nextel's cooperation with Sprint took place prior to the merger, and it is those collaborative acts that are the basis for the tortious interference claim. Therefore, Nextel was not a party to the Management Agreement at the time it was allegedly interfering with the Agreement for purposes of this tort.

  Nextel urges, however, that Northern must allege that an actual breach occurred prior to the merger in order to properly state a claim for tortious interference; that is: Northern's allegation that Sprint aniticipatorily breached the Management Agreement cannot suffice under Minnesota law. However, the Court has doubts regarding whether Nextel accurately recites Minnesota law on this issue. While Nextel argues that it is established Minnesota law that a tortious interference claim requires the breach of a contract, this argument does not adequately explain the Minnesota Court of Appeals decision in <u>Metropolitan Sports Facilities Commission v. Minnesota Twins Parnership</u>, 638 N.W.2d 214, 228 (Minn. Ct. App. 2002). In that case, the defendant argued (in the context of a motion for a preliminary injunction) that the plaintiff was unlikely to prevail on

its tortious interference claim because "no remedy is available where no breach has occurred." Id. The court rejected this argument, and noted that "once a party to a contract has established that this tort applies, the courts may hold that third party liable for resulting damages as well as grant necessary injunctive relief." Id.

Nor has Nextel directed the Court to any controlling authority holding that a tortious interference claim must fail in a case such as this one. The two controlling Minnesota Supreme Court cases, while listing "intentional procurement of [a contract's] breach" as an element of the tort, do not hold that the tort is inapplicable in circumstances similar to those present here. See Kallok, 573 N.W.2d at 362 (noting that the intentional procurement element was "easily established" without extended discussion of the requirements under that element); Kjesbo, 517 N.W.2d at 588 (noting that the defendants "concede[d]" that the intentional procurement element was satisfied without discussion). While there is an unpublished report and recommendation from this District concluding otherwise, see Cyberoptics v. Yamaha, 1996 WL 673161, at *19 (D. Minn. July 29, 1996) (R&R) (relying on Kjesbo for the proposition that "the Minnesota Supreme Court has permanently laid to rest the separate claim for an 'interference with a contract'"), other opinions from this District have come to a contrary conclusion—one that is consistent with the denial of Nextel's Motion, see A& L Laboratories, Inc. v. Bou-Matic, LLC, 2003 WL 21005305, at *3 (D. Minn. Apr. 25, 2003) (noting that "a tortious interference claim may lie when a rival attempts to secure the breach of a contract, not merely when such a breach

11

actually happens"); <u>Telluride Asset Mgmt. LLC v. Bridgewater Associates, Inc.</u>, 2005 WL 1719204, at *2 (D. Minn. July 11, 2005) (R&R) (same).

Furthermore, even if the Court were to accept Nextel's argument—that in order to successfully state a claim of tortious interference, a party must allege that a breach of contract has occurred—Nextel's sought after result does not follow.  Northern has clearly alleged that Nextel acted prior to the merger to interfere with the Management Agreement. That the breaches may have occurred after the merger—and therefore, after Nextel was bound by the Management Agreement—does not change the fact that it was <u>not</u> a party to the Agreement when it was allegedly "cooperating" with Sprint to execute the merger agreement.  Nextel has not directed the Court to any authority suggesting that, even if an actual breach is required to state a successful tortious interference claim, the actions constituting the <u>procurement</u> of that breach and the breach itself must occur at the same time.  In fact, the nature of the tort is such that this will likely often not be the case.  <u>See, e.g.</u>, <u>Kallok</u>, 573 N.W.2d at 362 (noting that procural of breach occurred where a prospective employer offered an individual a position "that he <u>eventually</u> accepted" (emphasis added)).  The Court is not inclined to embrace a reading of the law that would allow an alleged tortfeasor to avoid any liability in tort because it successfully achieved the object of its allegedly tortious conduct—here merging with Sprint and becoming a party to the Management Agreement.  Accordingly, the Court determines that Northern has stated a claim for tortious interference with contract against Nextel, and that claim will not be dismissed.

**B.      Civil Conspiracy**

Nextel also argues that Northern's civil conspiracy claim against it should fail because the underlying tort—tortious interference with contract—should fail. (Mem. in Supp. at 8-9.) Because the Court has determined that Northern has properly stated a claim for tortious interference with contract, it likewise determines that Northern has sufficiently alleged an underlying tort for its civil conspiracy claim. Accordingly, the civil conspiracy claim against Nextel will not be dismissed.

## Conclusion

Based on the foregoing, and all of the files, records, and proceedings herein, **IT IS ORDERED** that Nextel's Motion to Dismiss (Doc. No. 7) is **DENIED**.

Dated: April 21, 2006                                              s/Richard H. Kyle
                                                                                    RICHARD H. KYLE
                                                                                    United States District Judge